UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JERAMIAH BROWN,

                              Plaintiff,                  5:22-cv-762 (BKS/TWD)

v.

UPS UNITED PARCEL SERVICE, INCORP.

                              Defendant.
_____

**Appearances:**

*For Plaintiff pro se:*
Jeramiah Brown
Theresa, NY 13691

*For Defendant:*
Joseph K. Merical
Dinsmore & Shohl LLP
191 West Nationwide Boulevard, Suite 200
Columbus, OH 43215

Ya Li
Christopher M. Jones
Dinsmore & Shohl LLP
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

      Plaintiff Jeramiah Brown, proceeding *pro se*, brings this action against Defendant United Parcel Service, Inc. ("UPS"), alleging employment discrimination in violation of federal law. Plaintiff filed a Second Amended Complaint ("SAC") on December 5, 2022. (Dkt. No. 14). Following the Court's review of the SAC, the Court dismissed several of Plaintiff's claims

pursuant to 28 U.S.C. § 1915(e)(2)(B). (Dkt. No. 25). Plaintiff's sex (and sexual orientation) discrimination claims pursuant to Title VII of the Civil Rights Act of 1964 alleging a hostile work environment, discriminatory discharge, and retaliation survived initial review. (*Id.*). Defendant now moves to dismiss the Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. (Dkt. No. 33). The motion is fully briefed. (*See* Dkt. Nos. 34, 38, 39, 40, 42). Defendant also moves to strike certain of Plaintiff's filings pursuant to Rule 12(f) of the Federal Rules of Civil Procedure and Local Rule 7.1(a)(1). (Dkt. Nos. 50, 51). This motion is also fully briefed. (*See* Dkt. Nos. 51, 53, 55, 56). For the following reasons, the Court grants Defendant's motion to dismiss and denies its motion to strike.

## II.     FACTS[1]

Plaintiff "identifies as [n]on[b]inary" for sex.[2] (Dkt. No. 14, at 3). He alleges that on November 1, 2021, he was hired by UPS as a "Personal Seasonal Delivery Driver." (*Id.*). On November 3, 2021, Plaintiff "reported to duty at a UPS Warehouse" in Watertown, NY. (*Id.*). While there, an individual identified as Robert Milne allegedly made several comments to Plaintiff, including that his "hands were too thin to handle packages"; that Plaintiff "was too thin to be employed at UPS"; and that customers would complain if Plaintiff handled their packages due to his appearance. (*Id.* at 6). Milne "compared [Plaintiff's] [a]ppearance to" a female human resource representative, McKenzie, and "made humiliating and degrading jokes stating [Plaintiff]

---

[1] Such facts are drawn from Plaintiff's SAC, (Dkt. No. 14), as well as the charge filed with the NYSDHR by Plaintiff, (Dkt. No. 34-1), which is explicitly referenced in the SAC, (Dkt. No. 14, at 8–9), and of which the Court may take judicial notice, *see Taylor v. City of New York*, 207 F. Supp. 3d 293, 299 (S.D.N.Y. 2016) ("Courts in this Circuit have repeatedly held that when EEOC charges are expressly referred to in the pleading, they may be considered incorporated by reference." (citation omitted)); *see also Guy v. MTA N.Y.C. Transit*, 407 F. Supp. 3d 183, 191 (E.D.N.Y. 2016) (taking judicial notice of NYSDHR materials, noting that the court "may take 'judicial notice of the public records and reports of relevant administrative bodies'") (citation omitted). The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

[2] Plaintiff uses "he/him/his" pronouns throughout the SAC. (*See* Dkt. No. 14). The Court does the same.

sounded feminine," and that Plaintiff "looked thin, feminine, and should be working behind a desk." (*Id.* at 6, 11; *see also id.* at 4). Milne "questioned McKenzie" why she had "hired someone like" Plaintiff and yelled at her "due to the selections [Plaintiff] made on his [a]pplication with UPS" (Plaintiff had "selected [n]onbinary for Gender Identity") and "due to [Plaintiff's] appearance." (*Id.* at 6, 11). Plaintiff alleges that Milne made him wait over an hour and required Plaintiff to be scheduled for a road test the following day with Cole Worden, a package deliverer, unlike other employees who were scheduled for shifts and assigned new routes. (*Id.* at 7; *see also id.* at 6). Plaintiff states "[n]o [o]ther Seasonal Personal Delivery Driver was forced or be [sic] admitted to a [r]oad test with" Worden (*Id.* at 7). Plaintiff was not paid for that day. (*Id.*). Plaintiff emailed Ashley Janisch, a UPS Regional Headquarters Human Resource Agent, regarding Plaintiff's position with UPS that day. (*Id.* at 7–8). She did not respond. (*Id.* at 8).

Plaintiff took the road test with Worden on November 4, 2021. (*Id.* at 7). After the road test, Plaintiff tried multiple times to get in touch with Janisch "to report the [h]ostile work environment and [u]nequal terms of conditions of employment with the road test," but, other than asking in an email what she could help him with on November 4, she did not call Plaintiff or respond to him further. (*Id.* at 8). Plaintiff states that "McKenzie refused to schedule [Plaintiff] for [f]uture [s]hifts or delivery [r]outes." (*Id.*).

Plaintiff filed a discrimination charge with the New York State Division on Human Rights ("NYSDHR") on approximately November 17, 2021. (See *id.* at 8; *see also id.* at 4; Dkt. No. 34-1, at 2).[3] In the charge, Plaintiff checked the following boxes regarding the "[b]asis of the

---

[3] Plaintiff states in his SAC that he filed the charge with the NYSDHR on November 17, 2021, (Dkt. No. 14, at 8), but the charge is marked as "received" on November 16, 2021. (Dkt. No. 34-1, at 2).

3

alleged discrimination": "Age," "Disability" (specifying "TAR Syndrome"), and "Sexual Orientation" (specifying "[n]onbinary"). (Dkt. No. 34-1, at 3). In Plaintiff's "[d]escription of alleged discrimination," Plaintiff alleges facts relating to his application, showing up to work, being asked to take a road test, and the results of that road test. (*Id.* at 5). Plaintiff states that during his first day, on November 3, 2021, he was "shadowed by [a] [s]upervisor," with whom Plaintiff "delivered packages" while the supervisor "shadowed" him. (*Id.*). Plaintiff states that he "informed [his] supervisor before leaving the UPS Facility that [his] [a]rms are shorter – so it takes a little more effort for [him] to turn the steering wheel due to [his] disability." (*Id.*). When Plaintiff and the supervisor "arrived back at the facility he silently got out of [Plaintiff's] car" and "[t]old [Plaintiff] he would contact [him] later that night regards of [sic] my results & to schedule me for a shift for employment." (*Id.*). The charge states Plaintiff received a call from the supervisor on November 4, 2021, and was told by his supervisor that he would not be employed as a "Personal Driver" because he was a "[s]afety [r]isk" but that his supervisor would try to get Plaintiff a job "inside of the UPS Facility instead" as "a package handler." (*Id.* at 5). The description is then cut off. (*Id.* at 5; *see also id.* at 7 (regional director of NYSDHR stating in letter to UPS that NYSDHR received the complaint as cut off and that "[t]his is the way that [the agency] received the complaint")).

On November 21, 2021, Plaintiff states he contacted the UPS help line and reported that he was "not being scheduled shifts due harassment and retaliation [Plaintiff] received" after filing a charge with the NYSDHR. (Dkt. No. 14*,* at 19). The UPS Help Line "[d]ocumented the incident" but "did not follow up with" Plaintiff further. (*Id.*). Plaintiff also states he "made a confidential report" to the UPS Help Line on December 10, 2021, but no one resolved or followed-up on Plaintiff's concerns. (*Id.* at 9).

4

Plaintiff alleges that on March 15, 2022, McKenzie lied to an NYSDHR investigator regarding Plaintiff's current employment status with UPS, and that "[s]ince filing a NYSDHR [c]omplaint against [UPS] McKenzie refused to resolve or acknowledge a resolution" with respect to Plaintiff's employment with UPS. (*Id.* at 8). The EEOC issued a Notice-of-Right-to-Sue letter on June 17, 2022. (*Id.* at 27; *see id.* at 4).

### III. DISCUSSION

#### A. Motion to Dismiss

##### 1. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" are insufficient; rather, a plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *E.E.O.C. v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[W]here, as here, a plaintiff is proceeding *pro se*, the complaint must be considered under a more lenient standard than that accorded 'formal pleadings drafted by lawyers.'" *Harrison v. New York*, 95 F. Supp. 3d 293, 313 (E.D.N.Y. 2015) (citation omitted). A *pro se* Plaintiff's complaint is to be liberally construed "to raise the strongest arguments that it suggests." *Costabile v. N.Y.C. Health & Hosps. Corp.*, 951 F.3d 77, 80 (2d Cir. 2020).

5

"Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Darby v. Greeman*, 14 F.4th 124, 128 (2d Cir. 2021) (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013)).

### 2. Administrative Exhaustion

Defendant's sole argument in support of its motion to dismiss is that Plaintiff failed to exhaust all his administrative remedies regarding his Title VII claims because he did not allege any facts related to sex discrimination in his charge with the NYSDHR. (Dkt. No. 34, at 4–6). Plaintiff responds by arguing that he "checked the 'sex/sex harassment' box, signaling their intent to raise sex discrimination claims." (Dkt. No. 42, at 2). Additionally, Plaintiff argues that "Plaintiff's sex discrimination claims are related to their employment and share common facts with their disability discrimination claims, making them reasonably expected to grow out of the investigation into the [c]harge." (*Id.*).

"Before an individual may bring a Title VII suit in federal court, the claims forming the basis of such a suit must first be presented in a complaint to the EEOC or the equivalent state agency." *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) (quoting 42 U.S.C. § 2000e-5). "An exception to the exhaustion requirement may be made for claims not formally asserted before the agency if they are 'reasonably related' to those properly filed with the agency." *Moore v. DeJoy*, 600 F. Supp. 3d 332, 343 (S.D.N.Y. 2022) (citing *Williams*, 458 F.3d at 70). "There are three types of claims which may be considered 'reasonably related' for purposes of satisfying the exhaustion requirement: (1) claims that 'fall within the scope of the [administrative agency's] investigation which can reasonably be expected to grow out of the charge of discrimination;' (2) claims that allege retaliation for filing an administrative charge; and (3) claims that allege 'further incidents of discrimination carried out in the same manner alleged in [the administrative] charge.'" *Wilson-Richardson v. Regional Transit Serv., Inc.*, 948 F. Supp. 2d 300, 305 (W.D.N.Y. 2013) (quoting *Carter v. New Venture Gear, Inc.*, 310 Fed.

App'x 454, 455 (2d Cir. 2009) (summary order). "In examining what issues would be expected to 'grow out of the charge of discrimination,' the Court looks to 'the factual allegations made in the . . . charge itself,' and determines 'whether the complaint filed with the [administrative agency] gave that agency adequate notice to investigate discrimination on both bases.'" *Id.* (quoting *Williams*, 458 F.3d at 70).

Here, Plaintiff's complaint with the NYSDHR does not mention facts relevant to his Title VII claims, and instead only discusses facts relevant to potential disability discrimination. (*See* Dkt. No. 34-1, at 5). Milne's comments are not mentioned, nor are any actions taken by McKenzie or Janisch. (*See id.*). Plaintiff does not mention any informal complaints that Defendant allegedly retaliated against. (*See id.*). Based on this charge, the NYSDHR would not have had notice that Plaintiff was asserting claims based on his sex or sexual orientation or that he was retaliated against for filing informal complaints.[4] *See e.g.*, *Wilson-Richardson*, 948 F. Supp. 2d at 305 ("Plaintiff's July 2, 2007 administrative charge purported to describe discrimination solely on the basis of disability, not race or sex, and none of the factual allegations raised therein would have created any expectation that discrimination on other bases should be explored."); *Anderson v. City of New York*, No. 22-cv-3990, ---F. Supp. 3d----, 2024 WL 183103, at *5, 2024 U.S. Dist. LEXIS 8834, at *12 (finding the plaintiff failed to

---

[4] Plaintiff also argues that he was retaliated against for filing the NYSDHR charge. (Dkt. No. 39, at 3–4 (stating that Defendant "discharge[d]" Plaintiff for filing the charge of discrimination). While a retaliation claim could be "reasonably related" to the charge Plaintiff filed, *see Wilson-Richardson*, 948 F. Supp. 2d at 305, not only does Plaintiff's present retaliation claim rely on informal complaints Plaintiff allegedly made to UPS *prior* to filing the NYSDHR charge, but there is no indication as to when Plaintiff was terminated. (*See, e.g.*, Dkt. No. 14, at 19 (alleging Plaintiff "to this day is still currently employed by UPS"). Although Plaintiff's First Amended Complaint alleged retaliation following the filing of the NYSDHR charge, the Court found that because Plaintiff failed to allege "*when* Defendants allegedly denied Plaintiff shifts . . . there was no basis for inferring causal connection." (*See* Dkt. No. 23, at 14). As the Court implicitly found in its prior decisions, (Dkt. Nos. 23, 25), the SAC did not cure this defect, (*see* Dkt. No. 14, at 8–9 (alleging "increased" harassment by UPS employees and denial of "employment opportunities" but providing no specific dates when these events occurred)). Although the SAC appears to allege that the destruction of flowers at Plaintiff's residence "[i]n the Summer of 2022" constitutes an adverse action, the SAC alleges no facts that would allow an inference that Defendant or its employees destroyed Plaintiff's flowers. (Dkt. No. 14, at 9).

7

administratively exhaust her race or religion discrimination claims where "[n]owhere [in the charge] does Plaintiff's description of the alleged discrimination mention, or even hint at, her race or religion"); *Guy*, 407 F. Supp. 3d at 192–93 (finding claims of racial discrimination were not administratively exhausted where "[t]he allegations in [p]laintiff's EEOC complaint [were] wholly unrelated to race").

It is true that in the NYSDHR charge, Plaintiff checked a box indicating that one of the bases for the alleged discrimination was his sexual orientation, (Dkt. No. 34-1, at 3). But as Defendant indicates, (Dkt. No. 34, at 5), "it is well-settled that merely checking a box, or failing to check a box does not necessarily control the scope of the charge," *Jones v. N.Y.C. Dep't of Educ.*, 286 F. Supp. 3d 442, 448 (E.D.N.Y. 2018) (quoting *Cooper v. Xerox Corp.*, 994 F. Supp. 429, 436 (W.D.N.Y. 1998)). Given the complete lack of facts related to discrimination based on Plaintiff's sexual orientation, the Court finds that Plaintiff did not exhaust his Title VII claims.

### B.     Motion to Strike

Defendant requests that the Court strike two of Plaintiff's Supplemental Responses, (Dkt. Nos. 39, 42), under Rule 12(f) of the Federal Rules of Civil Procedure. (Dkt. No. 51). Rule 12(f) of the Federal Rules of Civil Procedure states that "[t]he court may strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." (emphasis added). The supplemental responses at issue are not pleadings, and therefore Plaintiff's motion to strike is denied. *See Innovation Ventures LLC v. Pittsburg Wholesale Grocers Inc.*, No. 13-cv-6397, 2019 WL 3817389, at *1, 2019 U.S. Dist. LEXIS 140576, at *10 (E.D.N.Y. Aug. 14,

2019) ("Courts in this Circuit routinely deny motions to strike under Rule 12(f) which target legal briefs and memoranda as opposed to pleadings." (citations omitted)).[5]

## IV. PLAINTIFF'S PROCEDURAL OBJECTIONS

On July 18, 2023, Plaintiff submitted a letter to "express [his] objection to the dismissal of the case" which in part identified various supposed violations of the Local Rules. (*See* Dkt. No. 38). Plaintiff appears to object to Defendant's purported failure to file a case management plan and engage in discovery. (*See id.* at 2–3). However, as the Rule 16 conference "and related deadlines for exchange of Rule 26 Mandatory Disclosures and filing of the Civil Case Management Plan" were adjourned on June 21, 2023 and have not been reset, Defendant is under no obligation to file a civil case management plan or engage in discovery at this time. (*See* Dkt. No. 30).

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's Motion to Dismiss, (Dkt. No. 33), is **GRANTED** in its entirety; and it is further;

**ORDERED** that Plaintiff's Title VII claims based on a hostile work environment, discriminatory discharge, and retaliation are **DISMISSED** in their entirety; and it is further;

**ORDERED** that Defendant's Motion to Strike, (Dkt. No. 51), is **DENIED** in its entirety; and it is further;

**ORDERED** that the Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**

Dated: <u>March 29, 2024</u>
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

---

[5] Defendant is correct that Plaintiff's Supplemental Responses are untimely and not permitted under Local Rule 7.1(a). However, taking into account Plaintiff's *pro se* status, the Court decided to consider them in this instance.

9